**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LAVAN DELGADO, JR.                    :
                                      :
              Plaintiff,              :    CIVIL ACTION
                                      :
        v.                            :    No. 06-cv-0848
                                      :
SOUTHEASTERN PENNSYLVANIA             :
TRANSPORTATION AUTHORITY,             :
                                      :
              Defendant.              :


**MEMORANDUM AND ORDER**


**Joyner, J.**                                    **December 10, 2007**


        Presently before the Court is Defendant Southeastern

Pennsylvania Transportation Authority's ("SEPTA") Motion for

Summary Judgment ("D. Mot.") (Doc. No. 25), Plaintiff's Response

("P. Resp.") (Doc. No. 27), and Defendant's Reply ("D. Rep.")

(Doc. No. 28).  For the reasons set forth below, the Court GRANTS

Defendant's motion.


BACKGROUND

        Plaintiff Lavan Delgado, Jr., a Hispanic male, has been an

employee of Defendant SEPTA since 1995, working initially as

Vehicle and Equipment Mechanic.  In 1996 he was awarded a job as

Autobody First Class Technician, but returned to the Mechanic

1

position after one year, when his position was "retrenched" in company lay-offs.  In 1999, he returned to an Autobody Technician position in one of SEPTA's overhaul shops in Philadelphia, Pennsylvania, performing bus overhaul work such as replacing panels, windows and seats and preparing buses for painting. Plaintiff has worked in that position up to the present, and is a member of the Transport Workers Union, Local 234.  Plaintiff and other co-workers in his overhaul shop report to a "Maintenance Manager" (also called a Foreman), who supervises the shop and is also involved in disciplinary actions.  Plaintiff alleges that he applied for promotion to that position on several occasions, in 2001, 2003, and 2005; Defendant seems to admit only that Plaintiff applied for the Maintenance Manager position in 2005.[1]

*Disciplinary Actions Against Plaintiff and Plaintiff's Complaints*

Prior to the events at issue in this case, Plaintiff was the subject of disciplinary actions on eight separate occasions, mostly for failing to complete his work properly or abide by

---

[1] Outside of Plaintiff's own deposition testimony and his discrimination complaints, the parties have not submitted any information about any applications for promotion before 2005. However, as we note below, the ambiguity about those applications is largely irrelevant because any claims based on those applications are time-barred.

workplace procedure.[2]  Three of these "write-ups" by his supervisor resulted in reinstruction, and the rest produced written warnings.

On August 31, 2004, Plaintiff filed an internal complaint of discrimination with SEPTA's EEO/Affirmative Action Department. In that complaint, he asserted only that Defendant had discriminated against him because his applications for the Maintenance Manager position and requests for other supervisory positions were denied on the basis of his race.  (D. Mot. Ex. P-15).  Plaintiff was issued two more disciplinary write-ups on September 23, 2004, and October 5, 2004, for "Excessive time to complete task" and "Improper work," both of which resulted in verbal warnings.

On December 1, 2004, Plaintiff then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC").  (D. Mot. Ex. P-16).  In that complaint, he alleged that his applications for supervisory positions had been denied

_____

[2] The described bases for these write-ups, which were issued between October 16, 1995 and November 20, 2000, were, in chronological order: Failure to clean up work station; Minor accident with parked vehicle; Preparation of inspection reports; Preparation of work orders; Failure to punch time clock; Failure to perform work as assigned; Poor work; and Excessive time to complete task.  (D. Mot. p. 8).

based on his "National Origin," and that Defendant had retaliated against him for filing his internal complaint by writing him up for taking too long on the job, giving him bad evaluations, and otherwise making him "feel different." (Id.). Since the filing of that complaint, Plaintiff received four more disciplinary write-ups between March 14, 2005 and January 26, 2007.[3]

*Plaintiff's 2005 Application for Promotion*

On June 15, 2005, Defendant posted an open position for Maintenance Manager in Plaintiff's shop. This position was to be filled according to SEPTA's "SAM Promotion and Hiring Policy," ("Hiring Policy") which was intended to ensure that hiring would be based on merit and that "positions will be filled by the best able and most competent candidates selected without regard to race, color, religion, national origin, age, gender, or disability." (D. Mot. Ex. A-1, p. 1). Under this policy, applicants for the promotion were first interviewed by a three-member panel and asked eleven predetermined Interview Questions.

---

[3] Plaintiff's first write-up during this period, on March 14, 2005, was based on a "Failure to properly report workplace injury," and resulted in a written warning. His next two write-ups, on January 30, 2006 for being "Injury prone," and on May 22, 2006 for "Using cell phone in body shop," resulted in one-day administrative suspensions. The status of the last write-up, on January 26, 2007 for "Excessive time to complete work," is pending.

These questions were identical for all six applicants, and focused on Experience, Management, Interpersonal/Labor Relations, and Technical criteria.  Applicants then completed a Writing Exercise which asked them to put themselves in the role of a supervisor and respond to a given situation.  Each member of the Panel independently scored each candidate by comparing Interview Question and Writing Exercise responses to pre-established "suggested responses" and assigning scores by how closely they matched.  The point values for each question varied, and an applicant could receive a maximum of 105 total points from each Panel member, or a 315-point combined total.

Plaintiff applied for the position and, on July 20, 2005, was interviewed by the three-member panel along with five other applicants.  In accordance with the Hiring Policy, Defendant set up a panel comprised of Thomas Hoffman and Robert Bergey, two Assistant Directors in the Automotive Engineering and Equipment Maintenance Department, and Colleen May, a Technical Instructor in the Training Department.  The Hiring Policy Interview Questionnaire and Writing Exercise were administered to each applicant.  It is undisputed that, after all six applicants had been interviewed and scored, Plaintiff ranked last, with a combined total score of 91 out of a possible 315 points. Filomeno Tosto, the candidate who ranked first with 277 points,

was chosen for the Maintenance Manager position over the other applicants, including Plaintiff.

*This Lawsuit*

Plaintiff filed his Charge of Discrimination with the EEOC and PHRC on December 1, 2004.  The EEOC subsequently issued a Notice of Right to Sue to Plaintiff, who filed his Amended Complaint in this Court on March 9, 2006.  Plaintiff alleges that Defendant, through its decision-making agents, discriminated against him on the basis of his race when it failed to promote him to the Maintenance Manager position, in violation of Title VII and the Pennsylvania Human Relations Act (PHRA).  Plaintiff also alleges that Defendant retaliated against him after he filed his internal EEO complaint of discriminatory failure to promote, in violation of Title VII and the PHRA.

<u>STANDARD OF REVIEW</u>

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976).  Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

6

matter of law." <u>Fed. R. Civ. P.</u> 56(c).  An issue is genuine only
if there is sufficient evidentiary basis on which a reasonable
jury could find for the non-moving party, and a factual dispute
is material only if it might affect the outcome of the suit under
governing law.  <u>Kaucher v. County of Bucks</u>, 456 F.3d 418, 423 (3d
Cir. 2006), citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986).  If the non-moving party bears the burden of
persuasion at trial, "the moving party may meet its burden on
summary judgment by showing that the nonmoving party's evidence
is insufficient to carry that burden."  <u>Id.</u>, quoting <u>Wetzel v.</u>
<u>Tucker</u>, 139 F.3d 380, 383 n. 2 (3d Cir. 1998).  In conducting our
review, we view the record in the light most favorable to the
non-moving party and draw all reasonable inferences in that
party's favor.  <u>See</u> <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir.
2000).  However, there must be more than a "mere scintilla" of
evidence in support of the non-moving party's position to survive
the summary judgment stage.  <u>Anderson</u>, 477 U.S. at 252.


<u>DISCUSSION</u>

     Defendant moves for summary judgment on Plaintiff's claims
of both substantive discrimination and retaliation.  We will
address each in turn.  As an initial matter, we note that we
apply the same legal standard for claims brought under the PHRA

7

as we do for claims brought under federal anti-discrimination laws addressing the same subject matter.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  Thus, our analysis of, and decision on, Plaintiff's discrimination claims under Title VII apply equally to his claims under the PHRA, as they are based on the same alleged conduct.

A.  Disparate Treatment Claim for Failure to Promote

Plaintiff first claims that in failing to promote him to the Maintenance Manager position, Defendant discriminated against him on the basis of his race.[4]  Claims of unlawful discrimination under Title VII are analyzed under the burden-shifting paradigm established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Under that standard, a Title VII plaintiff must establish a prima facie case by demonstrating: (1) he is a member

_____

[4] Plaintiff makes vague assertions that he applied for, and was denied, the Maintenance Manager position "and other supervisory positions" in 2001, 2003, and 2005.  There is absolutely no evidence in the record outside of Plaintiff's own assertions to support any claim related to applications for positions in 2001 and 2003.  Furthermore, any such claim would be time-barred under Title VII because it arose more than 300 days before the filing of Plaintiff's EEOC complaint on December 1, 2004.  See 42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 101 (2002).  Thus, we only consider the alleged discrimination in Defendant's rejection of 2005 application, which is also the only incident on which any real evidence has been produced by the parties.

of a protected class; (2) he was qualified for each position sought or held; (3) he was discharged from or denied that position; and (4) non-members of the protected class were treated more favorably. Id.; see also Economos v. Scotts Co., 2006 WL 3386646, at *5 (E.D. Pa. Nov. 21, 2006). If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for each decision. McDonnell Douglas, 411 U.S. at 802; Abramson v. William Paterson College of N.J., 260 F.3d 265, 282 (3d Cir. 2001). Once the employer has done so, the burden shifts back to the plaintiff to demonstrate that the proffered reasons are pretextual. Id.

Defendant does not dispute that Plaintiff is able to make out a prima facie case here. Rather, Defendant's primary argument is that it had a legitimate, non-discriminatory reason for hiring another applicant for Maintenance Manager instead of Plaintiff. Specifically, it is undisputed that, of the six applicants for the position, Plaintiff received the lowest score from each of the three interviewers. Defendant points out that each applicant went through the same standardized application process and was asked the exact same questions by the panel, the answers to which were then compared against a preestablished list of suggested responses. We agree with Defendant that Plaintiff's

9

across-the-board receipt of the lowest interview scores in a standardized interview process is a legitimate, non-discriminatory reason for denying him the Maintenance Manager position.

Thus, the burden shifts back to Plaintiff to show that the reason given by Defendant is mere pretext for discriminatory animus.  At this step, Plaintiff may avoid summary judgment by pointing to evidence that "(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 762 (3d Cir. 1994).  In other words, the plaintiff must point to evidence that casts enough doubt on the asserted reasons so that a "reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." <u>Fuentes</u>, 32 F.3d at 765 (citations omitted).

Plaintiff's only serious attempt to respond to Defendant's proffered justification is in arguing that the interview process was "spearheaded by [the] personal opinions and subjective beliefs of the panelists."  (P. Resp. p. 7).  He bases this

belief on his assertion that (1) Thomas Hoffman, Plaintiff's former supervisor and a member of the interview panel, had a personal bias against Plaintiff, and (2) Plaintiff received different scores than other candidates for answers that he believed to be "the same or better."  First, Plaintiff's contention that Hoffman harbored a preexisting bias against him is completely devoid of any evidence in the record outside of Plaintiff's own bald accusations in his deposition.  In particular, Plaintiff argues that Hoffman's refusal to select him to serve as a "backfill" manager (a temporary foreman chosen from Union ranks) is evidence of his discriminatory intent to deny opportunities for advancement.  However, Hoffman testified in his Declaration that at the time Plaintiff expressed interest in serving as a backfill manager, he was in a different department and had no authority to select backfill managers on the engine line, where Plaintiff worked.  Plaintiff has produced no other evidence to support his accusation that Hoffman was intent on denying him opportunities for advancement due to his race; rather, he stated in his deposition that he had no evidence of discriminatory intent, but that he just "felt it" because other backfill managers were white.  This falls far short of the evidence required to create a factual issue about Hoffman's

personal biases, and we must thus reject Plaintiff's argument on this point.[5]

More substantially, Plaintiff argues that Defendant could not have "trusted" the three-person panel that interviewed him for the Maintenance Manager position because it was a subjective process subject to "hidden biases." However, the mere fact that a decision-making process was subjective or that the plaintiff disagrees with that process's evaluation of him are not sufficient to show pretext. See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991), overruled in part on other grounds, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); see also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509 (3d Cir. 1993) (pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important). Rather, to show that relying on the results of a structured interview process was mere pretext for discrimination, Plaintiff must point to evidence indicating

_____

[5] In a sad attempt to impugn Hoffman's character and attack the foreman interview process, Plaintiff also accuses Hoffman of exhibiting bias because he stated that part of the reason he believed Plaintiff would not make a good Maintenance Manager is that he does not "communicate" well with others. Plaintiff insists this is an indirect reference to his accent, and thus an "egregious" comment on his Hispanic ethnicity. But Plaintiff did not even ask Hoffman if this is what he meant, and there is not a shred of evidence to support such an inferential leap; thus, we refuse to make it.

either discriminatory intent by the decision-makers or that the process itself was discriminatory.  See Beckett v. Dept. of Corrections of the State of Del., 981 F. Supp. 319, 327-28 (D. Del. 1997)(citing Shealy v. City of Albany, Georgia, 89 F.3d 804 (11th Cir. 1996)("Subjective promotion criteria are not discriminatory per se.").

Plaintiff has not done that here.  We have already noted that his claims that one interviewer, Thomas Hoffman, held a preexisting bias are thoroughly unsupported in the record. Plaintiff argues, however, that the interviewers exhibited discriminatory bias in giving him different scores from other candidates on certain questions where he believes he gave "the same or better" answers.  He bases this accusation on the interviewers' notes, which summarize each applicant's answer and record the corresponding score given for that question.  Those notes indicate that on two questions out of the eleven posed to the applicants, Plaintiff received lower scores than several other applicants despite having answers that seemed to be similar in wording.  However, all those notes show is what was already obvious from the nature of the process - that the scoring was based on a subjective evaluation of Plaintiff's performance in the interview.  Plaintiff has not claimed that he was subjected to a different process from other candidates, and in fact he

13

admits that he was asked the same questions as the other applicants.  He has also produced no evidence whatsoever that there was a systematic bias in the standardized process created by the hiring department and SEPTA's affirmative action office.  Thus, Plaintiff's reference to the different questionnaire scores, without more, falls well short of what is required to show pretext where subjective evaluations are involved.

Accordingly, Plaintiff has not carried his burden in producing evidence that would allow a reasonable factfinder to believe that Defendant's legitimate, non-discriminatory reason for failing to promote Plaintiff was mere pretext.[6]

---

[6] Plaintiff alleges a number of other "discriminatory" incidents that might bear on the question of discriminatory animus.  Specifically, he claims:  he was given used tools, while white employees received new ones; he was given a work hat with a "fruit print" while other white employees received ordinary black work hats; co-workers made discriminatory comments to him; and two other African-American employees were demoted despite having "experience."  Not one of these allegations is supported by any evidence outside of Plaintiff's own bald accusations in his deposition testimony, and none of the individuals involved in any of these claims was deposed.  Thus, these wild accusations also fall well short of the bar for proving that Defendant's asserted reliance on the structured interview process was actually pretext for discriminatory animus.  See NLRB v. FES, 301 F.3d 83, 95 (3d Cir. 2002)(unsupported statements insufficient to survive summary judgment).

B.  Retaliation Claim

Plaintiff also claims that in writing him up for several disciplinary actions, Defendant took retaliatory action against him for filing an internal EEO/Affirmative Action Department complaint for race discrimination based on SEPTA's failure to promote him, in violation of Title VII, 42 U.S.C. § 2000e-3(a), and the PHRA, 43 Pa. Cons. Stat. § 955(d).  Title VII and the PHRA make it unlawful for an employer to discriminate against an employee who has opposed practices made illegal by Title VII or the PHRA, or because she participated in an investigation or proceeding under those statutes.[7]  Id.  To succeed on his claim of unlawful retaliation, Plaintiff must demonstrate: (1) he engaged in an activity protected by Title VII; (2) after or contemporaneous with engaging in that conduct, his employer took an adverse action against him; (3) the adverse action was "materially adverse"; and (4) a causal link exists between his participation in the protected activity and the employer's adverse action.  See Hare v. Potter, 220 Fed. Appx. 120, 127 (3d Cir. 2007)(citing Burlington N. & Santa Fe Ry. Co. v. White, 126

---

[7]We reiterate that our analysis for Plaintiff's retaliation claim under the PHRA will be the same as it would be for the Title VII retaliation claim.  Thus, though we specifically address Title VII here, our conclusions apply equally to the PHRA claim.

S. Ct. 2405, 2415 (2006)).  To satisfy the third, "material adversity," prong, Plaintiff must prove that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 128.  If Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendant to advance a legitimate, nonretaliatory or nondiscriminatory reason for its actions.  Id. at 127.  If Defendant has done so, the burden shifts back to Plaintiff to prove that the nonretaliatory or nondiscriminatory reason is merely a pretext for discrimination.  Id.

Plaintiff engaged in protected activity when he filed his internal EEO complaint on August 31, 2004, and his external EEOC complaint on December 1, 2004.[8]  Plaintiff was also subject to

---

[8] Defendant points out that Plaintiff lied about his qualifications for the supervisory positions and told SEPTA that he possessed a high school diploma - a published requirement for the positions - when in fact he did not.  Thus, Plaintiff argues that he did not engage in protected activity because he did not file his complaints with a "good faith, reasonable belief" that a Title VII violation had occurred.  See Clark County v. Breeden,532 U.S. 68, 271 (2001); Aman v. Cort. Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996).  This information was discovered for the first time during Plaintiff's pre-trial deposition, and thus it could not be considered with respect to Plaintiff's substantive discrimination claim.  See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359 (1995)(holding that after-acquired evidence may not be used in determining liability for Title VII discrimination, though it may be considered at the remedy phase).  We are not aware of any case bearing on whether after-acquired evidence may be used for a claim of unlawful retaliation.  Furthermore, there appears to be a split in authority as to whether the "good faith, reasonable belief"

"adverse employment actions" when he received six disciplinary violations for various infractions - two "write-ups" after his internal complaint, on September 23, 2004 and October 5, 2004, and four "write-ups" after the EEOC complaint, between March 14, 2005 and January 26, 2007.

However, Defendant argues that Plaintiff has not made out a prima facie case of unlawful retaliation because he has not produced any evidence showing that a causal link existed between his complaints and the write-ups. We agree. In determining whether Plaintiff has met the causation element of the prima facie case, we consider all evidence that is "potentially probative of causation." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). Temporal proximity between the protected activity and the employer action may indicate causation, but "the mere fact that adverse employer action occurs after a complaint will ordinarily be insufficient to satisfy the

---

requirement for protected activity should apply to claims under the "participation clause" of Title VII's anti-retaliation provision, under which Plaintiff's claim falls here. Compare Mattson v. Caterpillar, Inc., 359 F.3d 885 (7th Cir. 2004)(refusing to distinguish between the "participation" and "opposition" clauses of Title VII's anti-retaliation provision) with Johnson v. Holway, 439 F. Supp. 2d 180 (D.D.C. 2006)(noting that the "participation clause" is absolute in its terms and refusing to apply the reasonableness standard under it). However, because we find that judgment should be granted for Defendant on other grounds, we need not address those open questions here.

plaintiff's burden of demonstrating a causal link between the two events."  Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)(quoting Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).  Rather, in cases where temporal proximity was not "unusually suggestive" of retaliatory motive, the Third Circuit has demanded further evidence to substantiate a causal connection.  See Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003)(where "the temporal proximity is not so close as to be unduly suggestive . . . timing plus other evidence may be an appropriate test"); Farrell, 206 F.3d at 280; Krouse, 126 F.3d at 503; cf. Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989) (finding that plaintiff established causation on retaliation claim merely by showing that discharge occurred just two days after filing of complaint).  Such other evidence may include, but is not limited to, a "pattern of antagonism" by the employer that could link the adverse action with Plaintiff's complaint.  See Farrell, 206 F.3d at 280; Krouse, 126 F.3d at 503-04; Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997).

The first of Plaintiff's write-ups in question came roughly three weeks after the filing of his internal complaint.  The Third Circuit has found the same length of time in other circumstances to not be "unduly suggestive," see Thomas, 351 F.3d at 114.  Likewise, in the context of this case, we find that the

18

amount of time that passed between the complaint and Plaintiff's first post-complaint write-up is not "unduly suggestive" of retaliatory motive.[9]  This was Plaintiff's <u>ninth</u> disciplinary action during his employment with SEPTA (the previous eight coming before his complaints), and he has not provided any evidence of retaliatory animus during the relatively long time between the complaint and the verbal warning he received as discipline.  Furthermore, Plaintiff has put forth not one iota of evidence outside of his own deposition testimony and the write-ups themselves to substantiate a causal connection.  Indeed, Plaintiff has not even attempted to show that the superiors who issue the write-ups actually knew about the complaints.  Instead, Plaintiff litters the court with more unsupported allegations that he was denied opportunities for training, prevented from working overtime, and assigned to do undesirable, "dirty" jobs. Yet Plaintiff has not deposed a single witness to corroborate those stories, nor has he produced a single pay stub or work log. Finally, Plaintiff attacks the write-ups themselves as evidence of "harassment" by claiming they were baseless.  Again, though,

_____

[9] The first write-up Plaintiff received after filing his EEOC complaint came more than three months after that protected activity.  Thus, in evaluating the timing we need only consider the shorter interval relating to the filing of Plaintiff's internal EEO complaint.

he does not even offer the scintilla of evidence that the Supreme Court has told us is required to survive summary judgment.  Thus, these unsupported allegations of harassment also fail to establish sufficient evidence of retaliatory animus to make a proper showing of causation.

Accordingly, because he has failed to produce sufficient evidence to establish a causal link between his complaints and the disciplinary write-ups, Plaintiff fails to make out a prima facie case for unlawful retaliation.[10]  We must therefore enter judgment in favor of Defendant on this claim.

C.  Conclusion

Plaintiff has produced virtually no evidence to support his many bald allegations of discrimination and retaliation by Defendant.  He has failed to sufficiently challenge Defendant's legitimate, non-discriminatory reason for failing to promote him

---

[10] Plaintiff also makes a passing assertion in his Response brief that several other incidents, including SEPTA's failure to promote him, were retaliatory acts.  However, the record is similarly devoid of any evidence whatsoever tending to establish a causal link between the complaint and any other alleged actions.  Furthermore, there is not even any evidence - outside of Plaintiff's own uncorroborated deposition testimony - that those actions, including being assigned to "dirty" jobs and being denied overtime and training opportunities, even occurred. Finally, even if Plaintiff could establish a prima facie case with respect to his failed 2005 application for promotion, he has not rebutted Defendant's legitimate, non-discriminatory reason for that decision.  Thus, Plaintiff's other, sparsely-briefed, claims of retaliatory acts do not survive summary judgment.

20

to Maintenance Manager, and there is no evidence supporting his claim of a causal link between his internal and EEOC complaints and any retaliatory employer action.  Accordingly, he has not created sufficient issues of fact to survive summary judgment under the <u>McDonnell Douglas</u> burden shifting analysis and the standards for claims of unlawful discrimination and retaliation under Title VII.  Defendant's Motion for Summary Judgment on those claims must therefore be GRANTED.

An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LAVAN DELGADO, JR.                    :
                                      :
            Plaintiff,                :    CIVIL ACTION
                                      :
    v.                                :    No. 06-cv-0848
                                      :
SOUTHEASTERN PENNSYLVANIA             :
TRANSPORTATION AUTHORITY and          :
THOMAS HOFFMAN,                       :
                                      :
            Defendants.               :

<u>ORDER</u>

AND NOW, this    10th    day of December, 2007, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 25), and responses thereto, it is hereby ORDERED that the Motion is GRANTED.  Judgment as a matter of law is ENTERED in favor of Defendant SEPTA and all of Plaintiff's claims against Defendant SEPTA are hereby DISMISSED.

                              BY THE COURT:

                              s/J. Curtis Joyner
                              J. CURTIS JOYNER, J.